UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------

| | | |
|---|---|---|
| ALBERTO TANZARELLA, | : | CASE NO. 1:17-cv-361 |
| Plaintiff, | : | |
| vs. | : | OPINION & ORDER |
| | : | [Resolving Docs. 16, 20, 22] |
| INTERTEK ASSET INTEGRITY MANAGEMENT, INC., | : | |
| Defendant. | : | |

-------------------------------------------------------

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

Plaintiff Alberto Tanzarella sues his former employer, Defendant Intertek Asset Integrity Management, Inc. ("Intertek"), for terminating him after Tanzarella returned to work from leave under the Family Medical Leave Act (FMLA).[1] Plaintiff Tanzarella brings claims for FMLA interference, FMLA retaliation, and wrongful discharge under public policy.[2]

Defendant moves for summary judgment on Plaintiff's claims.[3] Plaintiff opposes.[4] For the following reasons, the Court **DENIES** Defendant's motion for summary judgment.

# I. BACKGROUND

**A. Plaintiff's Employment at Intertek**

In January 2015, Matthew Guinn hired Plaintiff as an API Inspector at Hi-Tech Testing ("Hi-Tech").[5] As an API Inspector, Plaintiff provided inspection services for the chemical, oil, and gas industries.[6]

---

[1] Doc. 1.
[2] *Id.*
[3] Doc. 16.
[4] Doc. 20. Defendant replied. Doc. 22.
[5] Doc. 16-2 at 35:10-23, 38:10-24.
[6] *Id.* at 18:9-20:4.

By June 2016, Defendant Intertek acquired Hi-Tech, and Plaintiff Tanzarella became Defendant Intertek's employee.[7]

Both at Hi-Tech and Defendant Intertek, Guinn acted as Plaintiff's direct supervisor.[8] Guinn sent Plaintiff Tanzarella on assignments to Philadelphia, Baltimore, North Carolina, West Virginia, and Ohio.[9] Plaintiff Tanzarella was based at Intertek's Dover, Ohio office.[10]

## B. Plaintiff's Brain Tumor and Application for FMLA Leave

In 2003, Plaintiff Tanzarella received a diagnosis of a brain tumor.[11] Even after Plaintiff Tanzarella received surgery in 2004, sixty percent of the tumor remained.[12] Plaintiff underwent radiation treatment in 2014, but the tumor remained, though it was non-functional.[13]

When Guinn hired Plaintiff back in 2015, Plaintiff Tanzarella had informed Guinn of his brain tumor.[14] Around mid-to-late 2016, Plaintiff Tanzarella began experiencing side effects from the remaining brain tumor.[15] Around September 2016, Plaintiff Tanzarella told Guinn he would need to seek medical treatment for his tumor's side effects.[16]

On September 27, 2016, Plaintiff applied for FMLA leave with the third party administrator, Liberty Mutual Insurance.[17]

On September 28, 2016, Liberty Mutual Insurance confirmed receipt of Plaintiff's application for FMLA leave.[18] On the same day, Plaintiff Tanzarella texted Guinn: "I got up

---

[7] *Id.* at 52:23-53:2.
[8] *Id.* at 57:25-58:5; Doc. 16-3 at 25:9-18.
[9] Doc. 16-2 at 38:25-42:24.
[10] *Id.*
[11] *Id.* at 102:17.
[12] *Id.* at 102:19-22.
[13] *Id.* at 103:5-104:5.
[14] *Id.* at 104:20-105:20.
[15] *Id.* at 104:1-19.
[16] *Id.* at 114:12-23.
[17] Doc. 20-5; Doc. 20-6.
[18] Doc. 20-6.

Case No. 1:17-cv-361
Gwin, J.

feeling rough today . . . I did sign up for FMLA yesterday, I will give you the details tomorrow."[19]

The text message screenshot shows Guinn read Plaintiff Tanzarella's text message.[20]

### C. September 29, 2016 Recorded Conversation

The next day, on September 29, 2016, Plaintiff Tanzarella had a conversation with Guinn and Intertek's Operations Manager Ulrik Votava.[21] Apparently because the brain tumor caused memory difficulties, Plaintiff recorded the conversation on his cellphone.[22]

Guinn and Votava claim they did not know that Tanzarella had requested FMLA leave at the time of the recorded conversation.[23] Guinn testified that the recorded conversation only concerned Tanzarella's previous work absences,[24] and not his pending FMLA application.[25]

In the recorded conversation, Plaintiff Tanzarella told Guinn and Votava: "I can't promise you that I can be here every day."[26]

In response, Votava remarked:

"We need that. That's the thing. We're getting – I mean, this thing is so out of control. It's affecting everybody, and this needs – needs to get settled, you know – . . . You know if I'm at home and I got a f****** couch to move and I call in a friend of mine and say, 'Hey, can you help me move this couch?' I expect the guy to come, you know. And if he doesn't, I can't move the f****** couch. . . . You know, it's affecting all of us."[27]

At this point, Plaintiff Tanzarella stated that he could not quit his job, instead of taking leave, because he needed the income to care for his family.[28]

---

[19] Doc. 20-9.
[20] *Id.*
[21] Doc. 16-2 at 177:3-178:13; Doc. 16-8.
[22] Doc. 16-2 at 179:4-23.
[23] Doc. 16-3 at 27:19-28:6; Doc. 20-1 at 37:21-38:2; Doc. 16-16 at 50:9-17.
[24] Plaintiff Tanzarella had been absent from work on several occasions in 2016, including for sickness in April (Doc. 16-4 at 6) and July (*id.* at 1; Doc. 16-2 at 154:2-19); a family death in July (Doc. 16-2 at 154:23-155:13); vacation in August (*id.* at 130:7-16); and medical appointments in September (Doc. 16-5 at 4-5).
[25] Doc. 16-3 at 50:5-18; Doc. 20-1 at 38:3-12.
[26] Doc. 16-8 at 2:4-5.
[27] *Id.* at 2:6-3:12
[28] *Id.* at 3:13-4:7.

Guinn interrupted him and said: "Here's what it boils down to to me. You going to be here every day or not?"[29]

As Plaintiff Tanzarella attempted to say he could not make a promise to be there every day, Guinn interrupted him, and said:

> "Go home, then. Leave your sh** here and go to the house. I'll – we'll get ahold of Marlene. You can deal with her . . . Leave your – leave your computer or anything that's Hi-Tech's here and I'll get ahold of Marlene, and we'll see what happens . . . I don't need no part-time employees."[30]

In this conversation, Guinn was referring to Marlene Lichtenberger, the Human Resources Manager at Defendant Intertek.[31] Lichtenberg testified that Guinn had expressed interest in firing Plaintiff Tanzarella because of his poor performance with a client, but had hesitated due to Plaintiff Tanzarella's existing brain tumor.[32]

After the recorded conversation, Tanzarella testified that he called Lichtenberg, who told him he was on administrative leave.[33]

On October 12, 2016, Liberty Mutual Insurance retroactively approved Plaintiff's FMLA leave.[34] Liberty Mutual Insurance approved Plaintiff for FMLA leave from September 27, 2016 until December 19, 2016.[35]

Plaintiff testified that he told Lichtenberg while he was on FMLA leave that he had contacted an attorney about his FMLA rights.[36]

---

[29] *Id.* at 4:8-10.
[30] *Id.* at 4:13-5:2.
[31] Doc. 16-2 at 210:22-211:3.
[32] Doc. 20-4 at 78:13-79:9.
[33] Doc. 16-2 at 198:2-8.
[34] Doc. 20-7.
[35] *Id.*
[36] Doc. 20-2 at 216:8-217:6.

**D. Plaintiff's Termination on December 19, 2016**

On December 15, 2016, Plaintiff Tanzarella texted Votava that he would be returning to work on December 19, 2016.[37] Votava texted in reply that there were some layoffs, and said, "As soon as things pick up I'll give you [sic] a call."[38]

On December 19, 2016, Plaintiff Tanzarella reported for work, but Votava terminated Plaintiff Tanzarella that day, supposedly because of a lack of work.[39]

Votava testified that he did not actually terminate Plaintiff that day.[40] He believed that Plaintiff Tanzarella could still return to Intertek if there was more work in the future.[41]

But on December 20, 2016, Votava sent Lichtenberger Plaintiff Tanzarella's termination letter.[42] In the e-mail attaching the letter, Votava provided Lichtenberger a list of employees who were "sitting on the bench" due to lack of work.[43] Employees on the "bench" were not terminated, but were waiting to obtain work from Intertek.[44] Plaintiff Tanzarella was not on the list.[45]

**E. Lack of Work at the Dover Office**

Defendant Intertek states that on December 19, 2016 (Plaintiff's termination date), there was no more API inspection work at the Dover office.[46] Around October 2016, while Plaintiff was still on FMLA leave, Guinn had left Intertek and taken many Dover API inspection projects

---

[37] Doc. 16-5 at 14.
[38] *Id.* at 16.
[39] Doc. 16-2 at 83:13-25.
[40] Doc. 16-16 at 27:9-28:15.
[41] *Id.* at 27:12-18, 28:9-15.
[42] Doc. 16-13.
[43] *Id.*
[44] Doc. 16-12 at 72:21-73:13, 73:23-74:1.
[45] *See* Doc. 16-13.
[46] Intertek cites to many facts in the record that Plaintiff Tanzarella had work performance issues prior to his termination. *See* Doc 16-1 at 4-5; Doc. 22 at 11-12. Because Intertek claims it did not terminate Tanzarella for performance issues (Doc. 16-12 at 77:11-24), the Court does not re-cite those facts here.

to his new employer.[47] Intertek has not hired an API Inspector at Dover since March 2016.[48] And Intertek has since closed its Dover office.[49]

On December 19, 2016, there were five API Inspectors (including Plaintiff) working at the Dover office.[50] The other four API Inspectors continued working after Plaintiff's December 19, 2016, termination.[51] According to Intertek's records, these four API Inspectors left in 2017 because of a "better opportunity."[52] Plaintiff was the only API Inspector whom Intertek laid off.[53]

Plaintiff Tanzarella also testified that on the date he attempted to return to work, December 19, 2016, API Inspectors were leaving to perform work.[54] He noted that there were pending API inspection projects written on the white board at the Dover office.[55] Plaintiff Tanzarella admitted that Guinn's new employer, and not Intertek, finished those projects.[56]

**F. Plaintiff Was Not Hired at Intertek's Other Offices**

Lichtenberg testified that Intertek had a custom, though no written policy, of recalling laid off individuals if open positions became later available.[57] Lichtenberg testified that Plaintiff Tanzarella was eligible for rehire.[58] Lichtenberg also testified that Intertek did not customarily relocate employees to other geographical locations, but that there was also no written policy prohibiting it.[59]

---

[47] Doc. 16-2 at 87:2-19.
[48] Doc. 20-14.
[49] Doc. 16-7 at 17:14-15.
[50] Doc. 20-14.
[51] These API Inspectors left on January 1, 2017; January 3, 2017; February 14, 2017; and April 3, 2017. *Id.*
[52] *Id.*
[53] *Id.*
[54] Doc. 16-2 at 83:21-84:7.
[55] *Id.* at 85:10-86:19.
[56] *Id.* at 87:2-25.
[57] Doc. 16-12 at 55:3-20.
[58] *Id.* at 55:8-11.
[59] *Id.* at 54:4-20.

Plaintiff Tanzarella asked Lichtenberg about opportunities for work at Intertek's other offices and told her he was willing to work anywhere in the United States.[60] Lichtenberg testified that she did not try to find Tanzarella work in Intertek's other offices.[61]

Between December 19, 2016 and June 2017, Defendant Intertek hired eighteen API Inspectors at its La Porte, Texas office.[62]

Josh Hunker, a former Dover API Inspector, testified that Intertek offered him a position in Texas.[63] Hunker, however, was ultimately not hired in Texas because there was no work there.[64] Plaintiff also testified that Intertek had previously assigned another Dover employee to work in Oklahoma.[65]

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 56, "[s]ummary judgment is proper when 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"[66] The moving party must first demonstrate that there is no genuine dispute as to a material fact entitling it to judgment.[67] Once the moving party has done so, the non-moving party must set forth specific facts in the record—not its allegations or denials in pleadings—showing a triable issue.[68] The non-moving party must show more than some doubt as to the material facts in order to defeat a motion for summary judgment.[69] But the Court views the facts and all reasonable inferences from those facts in favor of the non-moving party.[70]

---

[60] Doc. 16-2 at 22:6-19; Doc. 16-12 at 52:25-53:24; Doc. 20-16.
[61] Doc. 16-12 at 52:15-24.
[62] Doc. 20-15.
[63] Doc. 20-3 at 30:5-32:14.
[64] *Id.* at 32:6-14.
[65] Doc. 20-2 at 67:9-15.
[66] *Killion v. KeHE Distribs., LLC*, 761 F.3d 574, 580 (6th Cir. 2014) (quoting Fed. R. Civ. P. 56(a)).
[67] *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[68] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).
[69] *Id.* at 586.
[70] *Killion*, 761 F.3d at 580 (internal citations omitted).

Case No. 1:17-cv-361
Gwin, J.

When parties present competing versions of the facts on summary judgment, a district court adopts the non-movant's version of the facts unless incontrovertible evidence in the record directly contradicts that version.[71] Otherwise, a district court does not weigh competing evidence or make credibility determinations.[72]

## III. ANALYSIS

### A. FMLA Claims

Plaintiff Tanzarella brings both FMLA retaliation and interference claims against Defendant Intertek for terminating him after he returned from FMLA leave.[73] The Court finds that there are genuine disputes of material fact concerning both claims.

#### 1. *Retaliation Claim*

FMLA retaliation claims "impose liability on employers that act against employees specifically *because* those employees invoked their FMLA rights."[74] An employer is prohibited from "us[ing] the taking of FMLA leave as a negative factor in employment actions,"[75] or "in any other manner discriminat[ing] against any individual"[76] who utilizes FMLA leave. Unlike with the FMLA interference theory, the employer's motive for taking the adverse employment action is relevant to FMLA retaliation claims.[77]

To establish a prima facie retaliation case, a plaintiff must show (1) that he engaged in an FMLA-protected activity; (2) that the employer knew the employee was exercising his FMLA rights; (3) after gaining such knowledge, the employer took an adverse employment action against

---

[71] *See Scott v. Harris,* 550 U.S. 372, 380 (2007).
[72] *Koren v. Ohio Bell Tel. Co.*, 894 F. Supp. 2d 1032, 1037 (N.D. Ohio 2012) (citing *V & M Star Steel v. Centimark Corp.*, 678 F.3d 459, 470 (6th Cir. 2012)).
[73] Claims for retaliatory discharge are cognizable under both FMLA retaliation and FMLA interference theories. *See Seeger v. Cincinnati Bell Tel. Co., LLC*, 681 F.3d 274, 282 (6th Cir. 2012).
[74] *Edgar v. JAC Prods., Inc.,* 443 F.3d 501, 508 (6th Cir. 2006).
[75] 29 C.F.R. § 825.220(c); *Arban,* 345 F.3d at 403.
[76] 29 U.S.C. § 2615(b).
[77] *Seeger,* 681 F.3d at 282.

-8-

Case No. 1:17-cv-361
Gwin, J.

him; and (4) there was a causal connection between the employee's FMLA activity and the adverse employment action.[78]

Under the *McDonnell Douglas* framework, after a plaintiff has made a prima facie case, the burden shifts to the defendant to offer a non-retaliatory reason for the adverse action.[79] The burden then shifts back to the plaintiff to show that the proffered reason is mere pretext.[80]

### a. Prima Facie Case

The parties only dispute the fourth prong of Plaintiff Tanzarella's prima facie case.

Intertek argues that Tanzarella fails to demonstrate the fourth prong because he can only point to temporal proximity between his FMLA leave and his termination.[81] Tanzarella responds that he points to temporal proximity, in addition to his heated conversation with Guinn and Votava, to establish a causal connection between his FMLA leave and his subsequent termination.[82]

The Court finds that there is a genuine dispute of material fact with respect to causation.

"The burden of proof at the prima facie stage is minimal; all the plaintiff must do is put forth some credible evidence that enables the court to deduce that there is a causal connection between the retaliatory action and the protected activity."[83]

While temporal proximity is often not enough to establish causation,[84] the Sixth Circuit has found temporal proximity sufficient where the employee's termination occurred within two to three months after the employee requested leave, or the employee's leave expired.[85]

---

[78] *Id.* at 283.
[79] *Donald v. Sybra, Inc.*, 667 F.3d 757, 762 (6th Cir. 2012).
[80] *Id.*
[81] Doc. 16-1 at 16.
[82] Doc. 20 at 17-18.
[83] *Dixon v. Gonzales*, 481 F.3d 324, 333 (6th Cir. 2007).
[84] *Vereecke v. Huron Valley Sch. Dist.*, 609 F.3d 392, 401 (6th Cir. 2010).
[85] *See Judge v. Landscape Forms, Inc.*, 592 F. App'x 403, 409-10 (6th Cir. 2014) (finding causation where two months or less passed between expiration of FMLA leave and termination); *Clark v. Walgreen Co.,* 424 F. App'x. 467, 473 (6th Cir. 2011) ("[T]he court correctly credited the temporal proximity [two months] of [the plaintiff's] leave and his firing as sufficient evidence of a causal connection between the two. Our precedents stand for the principle that timing matters."); *Bryson v. Regis Corp.,* 498 F.3d 561, 571 (6th Cir. 2007) (causal connection established where defendant terminated plaintiff on same day she returned to work and three months after her FMLA request).

Case No. 1:17-cv-361
Gwin, J.

Here, Intertek terminated Plaintiff on the same day that his FMLA expired, and less than three months after Tanzarella requested leave. The extremely close temporal proximity is enough to create a dispute of fact regarding Intertek's retaliatory motive.

Even if this extremely close temporal proximity were not enough, Plaintiff presents evidence to create a dispute of fact as to whether Plaintiff's FMLA leave motivated his termination.

There is evidence that Guinn and Votava were upset that Plaintiff could not promise to be at work every day.[86] The conversation's expletives and tone suggests that Guinn and Votava's conversation with Plaintiff was contentious.

While Guinn and Votava testified that they did not know about Tanzarella's future FMLA leave during the conversation, Plaintiff testified that he had informed at least Guinn of his intent to take FMLA leave.[87] Plaintiff sent Guinn a text message saying he signed up for FMLA leave, and the text message screenshot indicates Guinn had read it. Moreover, the recorded conversation occurred a day after Plaintiff received receipt confirmation of his FMLA leave application.[88]

Thus, there are genuine issues of material fact whether Intertek terminated Plaintiff Tanzarella because he took FMLA leave.

### b. Legitimate Motive

Because Plaintiff Tanzarella shows genuine disputes of material fact in his prima facie case, Intertek must show a legitimate, non-retaliatory reason for terminating Plaintiff. "Courts are

---

[86] Guinn testified that he was not upset during the recorded conversation and did not intend to fire Plaintiff. Doc. 20-1 at 29:7-51:25. Votava testified that he believed Guinn was upset during the conversation. Doc. 16-16 at 52:2-8. The Court views the facts in the light most favorable to Plaintiff and finds that there is material issue of fact on this issue.
[87] Doc. 20-2 at 177:4-178:10, 178:22-179:6.
[88] Intertek argues that Guinn's participation in the recorded conversation is irrelevant because he ultimately did not terminate Plaintiff. *See* Doc. 22 at 12. However, viewing the facts in the light most favorable to Plaintiff, the Court finds that Guinn's reaction to Plaintiff's absences, coupled with Plaintiff's eventual termination nearly three months later after his FMLA leave, creates an issue of fact as to Intertek's retaliatory motive.

Case No. 1:17-cv-361
Gwin, J.

not intended to act as 'super personnel departments to second guess an employer's facially legitimate business decisions.'"[89]

Intertek states that it fired Plaintiff Tanzarella because there was no available work for an API Inspector in the Dover office.[90] Intertek provides evidence that Guinn left Intertek while Tanzarella was on FMLA leave and took Dover's API inspection work with him. Intertek notes that it has since closed the Dover office.

These facts raise a genuine dispute of fact as to whether Intertek had a legitimate, non-discriminatory reason for terminating Plaintiff.

### c. Pretext

Plaintiff, however, may show that Intertek's proffered reason is pretext by demonstrating that the offered reason (1) had no basis in fact; (2) did not actually motivate the termination; or (3) was insufficient to warrant the termination.[91]

First, Plaintiff has presented evidence that creates a genuine dispute of material fact as to whether Intertek's offered reason had any basis in fact.

Intertek's records show that every other Dover API Inspector, except Plaintiff, remained employed for some months after Intertek fired Plaintiff for lack of API inspection work. The records also show that these API Inspectors left because of a "better opportunity," and not because they were laid off.

On the day of his termination, Tanzarella stated that there were open API projects listed on the Dover office white board. Intertek notes, however, that Intertek did not actually complete the "open" projects on the board.[92]

---

[89] *Adams v. Tennessee Dep't of Fin. & Admin.*, 179 F. App'x 266, 272 (6th Cir. 2006) (quoting *Bush v. Am. Honda Motor Co.*, 227 F.Supp.2d 780, 797 (S.D. Ohio 2002)).
[90] Doc. 16-1 at 16; Doc. 22 at 4-5.
[91] *Seeger*, 681 F.3d at 285.
[92] Doc. 22 at 8-9.

Plaintiff also presents evidence suggesting that Intertek could have restored Plaintiff to an equivalent API Inspector position at any of Intertek's offices. Plaintiff had worked at job sites across the country with Intertek. Intertek, however, argues that its failure to reinstate an employee does not make its offered reason, lack of work, pretext.[93]

The Sixth Circuit in *Skrjanc v. Great Lakes Power Serv. Co.* held that lack of available positions can be pretext if Plaintiff can demonstrate either that (1) Defendant "normally gives employees an opportunity to be considered for new jobs within the company when their positions are eliminated" or (2) "another employee who had not invoked FMLA rights was considered for transfer."[94]

Plaintiff has presented evidence to raise a genuine dispute of fact as to whether Intertek normally considered employees for jobs within Intertek when there was lack of work at a given location.

Intertek claims it does not generally relocate employees to other geographical areas. However, Intertek also admits there is no written policy prohibiting relocation. Tanzarella testified that he told Intertek he was willing to work anywhere in the United States. And since Intertek terminated Plaintiff, Intertek has hired at least eighteen API Inspectors in Texas.

Plaintiff also submitted evidence that Intertek considered relocating Hunker, a former Dover API Inspector like Plaintiff, to another Intertek location. Plaintiff Tanzarella testified that Intertek previously relocated another employee to Oklahoma. Neither party disputes that these employees did not invoke any FMLA rights.[95]

---

[93] Doc. 16-1 at 17; Doc. 22 at 9-10.
[94] 272 F.3d 309, 317 (6th Cir. 2001).
[95] Rather, Intertek asserts that Hunker and Tanzarella were not similarly situated because it was only able to offer the Texas position to Hunker at a time after Tanzarella had been discharged. Doc. 22 at 11. This argument, however, does not address why Intertek had to terminate Tanzarella in December 2016 for lack of work when it permitted other Dover API Inspectors like Hunker to work in 2017. Next, Intertek argues that Plaintiff cannot point to any Dover API Inspector who was loaned or transferred to another location around the same time Intertek terminated Plaintiff

Case No. 1:17-cv-361
Gwin, J.

As a result, there are also genuine issues of fact as to whether Intertek considered another employee for other opportunities in the company.

Second, as explained above, Plaintiff presents evidence, including his heated conversation with Guinn and Votava, that creates a dispute of fact as to whether lack of work actually motivated his termination.

Therefore, there are genuine disputes of material fact as to whether Intertek's purported reason for terminating Plaintiff was mere pretext. The Court **DENIES** summary judgment on Plaintiff's FMLA retaliation claim.

### 2. *Interference Claim*

FMLA interference claims impose liability on employers who "interfere with, restrain, or deny the exercise of or the attempt to exercise" any FMLA provision.[96] To survive summary judgment, Plaintiff must show (1) he was an eligible employee under the FMLA; (2) his employer was a covered employer under the FMLA; (3) he was entitled to leave under the FMLA; (4) he gave notice to his employer of his intention to take FMLA leave; and (5) his employer denied FMLA benefits to which he was entitled.[97]

Only the fifth prong is in dispute.[98]

Upon return from FMLA leave, an eligible employee is entitled to be restored to his original position or to an equivalent position.[99] The employer's intent is not relevant to whether it interfered with an employee's FMLA-created right to reinstatement following leave.[100]

---

Tanzarella. *Id.* However, it seems impossible for Plaintiff to make any such identification since no other Dover API Inspector was terminated at the same time as Plaintiff and would have needed to seek relocation.
[96] 29 U.S.C. § 2615.
[97] *See Wysong v. Dow Chem. Co.*, 503 F.3d 441, 447 (6th Cir. 2007) (quotations omitted).
[98] Doc. 16-1 at 13-15; Doc. 20 at 15-17; Doc. 22 at 4.
[99] 29 U.S.C. § 2614(a)(1).
[100] *Arban v. W. Publ'g Corp.*, 345 F.3d 390, 401 (6th Cir. 2003) (quotations omitted).

Case No. 1:17-cv-361
Gwin, J.

Nevertheless, an employee's right to reinstatement is not absolute. "'[A]n employee who requests FMLA leave would have no greater protection against his or her employment being terminated for reasons not related to his or her FMLA request than he or she did before submitting that request.'"[101]

Therefore, if an employer claims that an employee would have been discharged regardless of his FMLA leave, the employee must present sufficient evidence to rebut that contention.[102] The Sixth Circuit applies the *McDonnell Douglas* burden-shifting framework from the FMLA retaliation analysis to the FMLA interference analysis.[103]

As with Plaintiff's retaliation claim, Intertek argues it terminated Tanzarella because of lack of work at the Dover office, and not because of his FMLA leave.[104] However, as explained above, Plaintiff has presented sufficient evidence to create a material dispute of fact as to whether Intertek's offered reason for his termination is a pretext.

The Court therefore finds that there is a genuine dispute whether Tanzarella's dismissal would have occurred regardless of his taking FMLA leave. The Court **DENIES** summary judgment on Plaintiff's FMLA interference claim.

**B. Wrongful Discharge in Violation of Public Policy**

The Court also finds genuine issues of material fact exist regarding Plaintiff's claim of wrongful discharge for consulting an attorney.

To demonstrate wrongful discharge for violating public policy by consulting an attorney, the plaintiff must establish: (1) "[a] clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the *clarity*

---

[101] *Id.* (quoting *Gunnell v. Utah Valley State Coll.*, 152 F.3d 1253, 1262 (10th Cir. 1998)).
[102] *Id.*
[103] *Donald*, 667 F.3d at 762.
[104] Doc. 16-1 at 14.

Case No. 1:17-cv-361
Gwin, J.

element);" (2) "dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the *jeopardy* element);" (3) "[t]he plaintiff's dismissal was motivated by conduct related to the public policy (the *causation* element);" and (4) "[t]he employer lacked overriding legitimate business justification for the dismissal (the *overriding justification* element)."[105]

The parties' dispute centers on the third and fourth prongs. The parties do not dispute that Ohio public policy prohibits employers from terminating employees for consulting an attorney.[106]

Defendant's only argument is that the third and fourth prongs are not met because Defendant terminated Plaintiff for lack of work in Dover, and not because he consulted an attorney.[107]

For the same reasons stated above, however, Plaintiff has put forth sufficient evidence to create a genuine issue of material fact regarding Defendant's offered explanation for his termination.

Plaintiff also testified that he told Intertek's Human Resources Manager that while he was on FMLA leave, he had contacted an attorney about his FMLA rights. Intertek's Human Resources Manager denies this.[108] However, on summary judgment, we accept Plaintiff's version of the facts where it is not blatantly contradicted by the record.

Thus, whether Plaintiff was terminated for consulting with an attorney is a question of fact for the jury. Accordingly, the Court **DENIES** summary judgment on Plaintiff's claim for wrongful termination in violation of public policy.

---

[105] *Collins v. Rizkana*, 652 N.E.2d 653, 657-58 (Ohio 1995) (citation omitted).
[106] *See Chapman v. Adia Servs., Inc.*, 688 N.E.2d 604, 610 (Ohio 1997) ("[W]e hold that it is repugnant to the public policy of this state for employers to terminate employees for exercising their right to consult a lawyer. The courthouse door must be open to the people of Ohio, and it is not ajar when citizens may be fired for entering.").
[107] Doc. 16-1 at 19.
[108] Doc. 20-4 at 79:10-16.

Case No. 1:17-cv-361
Gwin, J.

## IV. CONCLUSION

For the above reasons, the Court **DENIES** Defendant's motion for summary judgment.


IT IS SO ORDERED


Dated:  October 31, 2017              *s/          James S. Gwin*
                                                                     JAMES S. GWIN
                                                                     UNITED STATES DISTRICT JUDGE